## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROSEMARY MUNYIRI, et al.        :
                              :
                              :
      v.                     :        Civil No. CCB-08-1953
                              :
                              :
GARY MAYNARD, et al.         :

## MEMORANDUM

Now pending is a supplemental motion for summary judgment filed on behalf of Mitchell Franks and Naomi Williams, former wardens of the Baltimore Central Booking and Intake Center ("CBIC"), and Latrice Lee, a correctional officer at CBIC (together, "the defendants"). The plaintiffs allege violations of the Fourth Amendment because they were subjected to a blanket policy of "suspicionless" strip searches before "presentment" to a judicial officer even though they had been arrested for minor offenses not involving weapons or contraband and were not being admitted to general population. The defendants deny the existence of a blanket policy, deny they are subject to supervisory liability, and, at issue for purposes of this opinion, assert the defense of qualified immunity. For the reasons stated below, considering the unsettled state of the law following the Supreme Court's decision in *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510 (2012), the motion for summary judgment will be granted.[1]

## BACKGROUND

Plaintiffs Rosemary Munyiri, Kimberly Felder, Christina Schaefer, and Nelear Walls (together, the "plaintiffs") were each arrested and brought to the Baltimore Central Booking and Intake Center ("Central Booking" or "CBIC") on charges or in cases not involving weapons,

---

[1] The defendants' Motion to Amend/Correct (ECF No. 88) also will be granted.

drugs, or felony violence between April 2008 and January 2009. Central Booking is an agency of the Division of Pretrial Detention and Services, which is a division of the Maryland Department of Public Safety and Correctional Services. It processes 300-400 arrestees per day, or over 100,000 arrestees per year. (*See* Franks Dep., ECF No. 87-2, at 81-83.)

After passing through a metal detector and pat search at the facility's entrance, female arrestees brought to the booking area go through a process that includes a brief medical exam, a more thorough search, intake at the booking window, and a fingerprint and photo identification. (*See* Sisco-Watts Decl., ECF No. 87-8, ¶ 2; Williams Dep., ECF No. 87-3, at 51-53.) Throughout each of these steps, and prior to presentment to the court, detainees are held in group holding cells containing up to 7 women. (Sisco-Watts Decl. ¶ 8.) Arrestees are not segregated within the group holding cells based on charge or criminal history (*Id.* ¶ 9.) They are placed in these holding cells at any time after being searched in the search room, including before going to the booking window, between the booking window and identification, and before or after medical evaluations. (*Id.* ¶¶ 8-9.) Arrestees remain in group holding cells until presentment before a court commissioner, generally within 24 hours of their arrival at Central Booking. (Rice Dep., ECF No. 87-9, at 15-16.) During this time, they have substantial unsupervised interaction with other detainees.

Despite the security procedures in place on the booking floor, contraband use and exchange among arrestees is a significant problem. Staff at Central Booking have observed arrestees attempting to bring a variety of contraband into the facility, including drugs, loaded guns, knives, syringes, liquor, cigarettes, and razor blades. (Phillips Dep., ECF No. 87-4, at 29, 41.) Staff who have conducted strip searches identify numerous items they discovered through such searches. For example, one employee found a "stashed cell phone under the breasts of a

female detainee." (Shorty Dep., ECF No. 87-5, at 23.) Another employee testified that "female offenders use muscles to store drugs between their legs up in their body cavity." (Phillips Dep. at 30.) At times, arrestees have been successful at smuggling contraband into Central Booking's group holding cells. Staff describe smelling marijuana coming from group holding cells on several occasions. (*Id.*) The presence of drugs and other contraband at an intake facility like Central Booking obviously creates substantial security concerns. (*See* Franks Dep.at 167-68.)

The plaintiffs in this case were arrested in Baltimore City without warrants on charges not involving drugs, weapons, or felony violence between April 2008 and January 2009.  Each was brought to the CBIC booking floor, where she was forced to (either) strip naked or drop her underwear, squat, and cough as part of a search before being taken to a group holding cell. (*See, e.g.*, Munyiri Dep., ECF No. 67-10, at 45-46; Walls Dep., ECF No. 67-12 at 37-38.) No contraband was found on any of the plaintiffs, nor did the defendants indicate any reason to believe the plaintiffs carried contraband into their holding cells.

The plaintiffs shared cells with numerous different arrestees while they were held at Central Booking. Though the plaintiffs were arrested on minor charges, some of their cellmates had been charged with major offenses ranging from assault  and prostitution to burglary. (*See* Felder Decl., ECF No. 87-12 and attached exhibits.) All of the plaintiffs were released directly from the booking floor upon presentment before a court commissioner. None was admitted to general population on the upper floors of CBIC.

The plaintiffs in this case allege that, pursuant to booking at CBIC, each was strip searched without any individualized finding of reasonable suspicion by CBIC employees that she was concealing drugs, weapons, or other contraband. On June 29, 2012, the defendants filed a supplementary motion for summary judgment in light of the *Florence* decision.

## ANALYSIS[2]

Government actors are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)) (internal quotation marks omitted). In determining whether qualified immunity applies, courts typically undergo a two-step analysis, assessing: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of a defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (internal citation omitted). Courts have discretion, however, to decide which of the two prongs should be addressed first. *Id.* at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right," and "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citations omitted). Courts should "define the right in light of the specific context of the case, not as a broad general proposition . . . that is, [whether it was] clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 417 (4th Cir. 2005). The determination of whether a right was clearly established is "essentially [a] legal question," to be made by the court. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This court should look to case law from the Supreme Court and the Fourth Circuit in

---

[2] The court's reasoning in this case is virtually identical to its recent decision in *Jones v. Murphy*, 2013 WL 822372 (D. Md. March 5, 2013).

assessing whether a right is clearly established. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

Until recently, the defendants did not appear entitled to rely on qualified immunity. Under Fourth Circuit law, "the right of those arrested for offenses not likely to involve weapons or contraband to be free from strip searches without any individualized finding of reasonable suspicion appears to be clearly established." *Jones v. Murphy*, 470 F. Supp. 2d 537, 547 (D. Md. 2007) (citing *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981); *Amaechi v. West*, 237 F.3d 356, 365 (4th Cir. 2001); *Abshire v. Walls*, 830 F.2d 1277, 1279-80 (4th Cir. 1987)). The recent decision by the Supreme Court in *Florence*, however, established that it does not violate the Fourth Amendment to require a strip search of every arrestee who will be admitted to the general population of a jail regardless of the offense for which he is arrested and without the need for individualized suspicion that the arrestee may have contraband or weapons. 132 S. Ct. at 1513-14, 1522. In so ruling, the Court relied on its analysis in *Bell v. Wolfish*, 441 U.S. 520 (1979), and the need for correctional officials managing a detention center or jail to have "substantial discretion to devise reasonable solutions to the problems they face." 132 S. Ct. at 1515. The Court also explained that "deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions," *id.* at 1516, and that "deference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Id.* at 1518.

The plaintiffs in this case point out that, although they had been admitted to CBIC, they had not yet been presented to a judicial officer for a determination of whether they would be admitted to the general jail population, or instead released, possibly even without presentment. Thus, they argue that the Fourth Circuit's prior case law still applies to their circumstances, or

that they fit within the possible "exceptions" acknowledged by Justices Kennedy, Roberts, and Alito.  Regarding these "exceptions," Justice Kennedy noted that the Court was not required "to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees." *Id.* at 1522.  Justice Alito stated "the Court does not hold that it is *always* reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population." *Id.* at 1524.  And Chief Justice Roberts added "the Court does not foreclose the possibility of an exception to the rule it announces." *Id.* at 1523.

Not surprisingly, the arguments by counsel in this case, and the analysis stated in the now numerous opinions which have been issued since *Florence*, focus on the possible contours of an exception to the rule announced by the Court.  The plaintiffs here had not been presented to a judicial officer, and were at some point released from CBIC rather than being admitted to the general jail population, thus satisfying certain aspects of a possible exception.  On the other hand, they were held in physical facilities that put them in substantial contact with other detainees, including some who were later admitted to general population, and under circumstances where contraband was apparently available at least on some occasions.  Analyzing similar circumstances, a district court in Iowa recently reversed its prior grant of summary judgment in favor of the plaintiffs and entered summary judgment in favor of the defendants as to the suspicionless strip search of detainees who were never admitted to general population but nonetheless on occasion were housed in cells with other detainees or handcuffed together for transportation to court. *Rattray v. Woodbury Co.*, -- F. Supp. 2d --, 2012 WL 6114994, at **16, 21 (N.D. Iowa Dec. 10, 2012).

The question before this court is not whether the plaintiffs' Fourth Amendment rights were in fact violated but whether, even assuming they fall under an exception to the rule announced in *Florence*, the right was 'clearly established" such that "a reasonable person in the official's position would have known that his conduct would violate that right." *Edwards*, 178 F.3d at 251. The court must look to case law from the Supreme Court and Fourth Circuit to make this determination.  *Id.*

It does not appear that the Fourth Circuit has addressed *Florence* except to note, in an unrelated case, the Court's holding "that strip searches of any and all arrestees housed in general population of local detention centers and jails are constitutionally permissible."  *Bennett v. R&L Carriers*, 2012 WL 2354633, at *21 (4th Cir. June 21, 2012).  Plaintiffs' counsel therefore argue that the holding in *Logan v. Shealy* is still controlling.  The difficulty is that the Supreme Court's opinion in *Florence* not only overruled some aspects of Fourth Circuit law (on which this court previously relied in denying the motion to dismiss) but in doing so left the contours of any "exception" that would apply to the plaintiffs in this case unclear and open to debate.  Simply put, "*Florence* erased any bright lines that previously existed in this area of Fourth Amendment law regarding searches in a detention facility."  *Wamble v. County of Jones*, 2012 WL 2088820, at *15 (S.D. Miss. June 8, 2012).  Indeed, the divergence of opinions in the recent cases from other districts and circuits on this issue underscores the present lack of a clear test applicable to the specific circumstances of detention practices at CBIC during the years at issue in this litigation.[3]

---

[3]  It is important to note this case does not involve a strip search at a station house or some other facility where substantial contact with other detainees can be avoided.

Accordingly, without addressing either the wisdom or the constitutionality of a blanket strip search policy at CBIC (if such policy was in place), the court is constrained to grant the individual defendants' motions for summary judgment on the grounds of qualified immunity.

A separate Order follows.


<u>March 29, 2013</u>                         _____/s/_____
     Date                                            Catherine C. Blake
                                                United States District Judge